Filed 3/17/23 In re Berthelotte CA4/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re COLE CHRISTOPHER BERTHELOTTE<br><br>on Habeas Corpus. | E079251<br><br>(Super.Ct.No. SWF2100454)<br><br>The County of Riverside<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. Albert J. Wojcik, Judge. (Retired judge of the Riverside County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Granted.

John P. Newton for Petitioner.

Kelly A. Moran and Minh C. Tran, County Counsel for Real Party in Interest Riverside County Sheriff's Department.

Michael A. Hestrin, District Attorney, and Jesse Male, Deputy District Attorney for Invited Participant, the People.

Cole Christopher Berthelotte filed a petition for writ of habeas corpus challenging the trial court's decision to set his bail at $1 million. He contends that the trial court failed to comply with *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*), and that the

1

district attorney's basis for requesting the bail amount stemmed from a campaign of vindictive prosecution. We issued an order to show cause. We now conclude a remand is necessary because the trial court failed to set out reasons on the record why less restrictive alternatives could not reasonably protect the government's interests in public or victim safety.[1]

## BACKGROUND

In April 2021, the People filed a complaint charging Berthelotte with oral copulation of a child under 14 (§ 287, subd. (c)(1)) and committing a lewd act on a child under 14 (§ 288, subd. (a)).

At the arraignment, Berthelotte pled not guilty and asked to be released on his own recognizance, given that he has no contacts outside the state, does not have a criminal history, and has lived in the same house with his mother his entire life. Berthelotte also noted that *Humphrey*, which had been decided just weeks earlier, "basically eviscerated" the state's pre-existing bail scheme. The court denied the request, found under *Humphrey* that "clear and convincing evidence [showed] that no accommodation of conditions [would] reasonably ensure the safety of the victim and public in this matter [a]nd no nonmonetary alternatives to bail are adequate or sufficient to ensure public safety or ensure the defendant's future court appearance," and set bail at $110,000. Berthelotte posted bail and subsequently obtained a job stocking grocery store shelves at night.

---

[1] Undesignated statutory references are to the Penal Code.

The People filed an amended complaint in February 2022 alleging an additional count of each crime. At the preliminary hearing two months later, the trial court held Berthelotte to answer and, upon the People's request, set a bail review hearing on the date of arraignment on the information. The People requested a bail review hearing based on the possibility that even more charges could be filed, which would affect the bail amount requested.

The subsequently filed information charged two counts of oral copulation of a child 10 or under (§ 288.7, subd. (b)) and two counts of committing a lewd act on a child under 14 (§ 288, subd. (a)). This increased Berthelotte's criminal exposure; although oral copulation of a child under 14 (as previously charged) is punishable by three, six, or eight years in prison, oral copulation of a child under 10 (as now charged) is punishable by a term of 15 years to life. (§§ 287, subd. (c)(1), 288.7, subd. (b).)

At the bail review hearing, the People requested that the trial court "set bail either at no bail under *Humphrey* or set it at $1 million," the amount set by the bail schedule. Berthelotte contended that the trial court (under a previous magistrate) misapplied *Humphrey* at the 2021 arraignment and that, under a proper analysis with the current pleading, the People failed to show that unaffordable bail or pretrial detention was authorized. He noted, as he did at the 2021 arraignment, that he has no criminal history, no contacts outside of the state, and that he has lived with his mother his entire life. He also noted that he has been in full compliance with the trial court's orders (by attending every hearing on time and complying with the protective order barring contact with the

3

victim) and that he has no access to the victim or other children.  In response, the People contended that the increased criminal exposure increased Berthelotte's flight risk; that he actually did have family outside of California; and that "we don't know whether he has continuing access to children."  Berthelotte replied that the People's reference to his family out of state were to his grandparents on his estranged father's side and that he does not speak to his father or have ties to those grandparents.

The trial court then stated its ruling in the following exchange:

"[Court:]  Looking at the amended felony complaint in the information, the stakes have been raised considerably.  I could understand why bail was what it was set at previously, $110,000, on this particular matter and the issues that I have to address because the complaint or the information is a new one.  It's a couple weeks old, May 11th.  Because of that and because of the stakes being raised, I do see a potential flight risk.  [¶]  The fact that Mr. Berthelotte appeared in court whenever he was ordered to appear in court, that was based upon the other charges.  We have the individual in two different incidents, I guess, under 14 years of age.  He is a threat to the alleged victim, a threat to public safety, alleged victim is under 14 years of age.  I am going to set bail in the amount of $1 million.  He will be remanded to custody at this time.

"[Defense Counsel]:  Your Honor, may I add one more thing?  May I add one more thing?

"[Court]: I don't want to hear anything further. If there's a *Humphrey* argument, if there's a *Humphrey* argument because of the issues I raised, I'd have him held without bail. So based on *Humphrey*, he will be held without bail; otherwise, it's $1 million."

The court exonerated the current bail bond and held Berthelotte on $1 million bail. Berthelotte currently remains in custody.

## DISCUSSION

*Humphrey* held that pretrial detention "is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interests." (*Humphrey*, *supra*, 11 Cal.5th at pp. 151-152.) The same is true if, instead of pretrial detention, a court sets bail at an amount a defendant cannot afford. (See *In re Kowalczyk* (2022) 85 Cal.App.5th 667, 690 ["If, in balancing the liberty interest of an accused with the state's compelling interests, an outright pretrial detention order would be appropriate, then a fortiori a bail order an in amount higher than a defendant can afford would also be appropriate"], footnote omitted.) These protections arise in no small part from the fact that "[t]he accused retains a fundamental constitutional right to liberty." (*Humphrey*, *supra*, at p. 150.)

Thus, "[w]here the record reflects the risk of flight or a risk to public or victim safety, the court should consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial." (*Humphrey*, *supra*, 11 Cal.5th at p. 154.) Only after "a reasoned inquiry" and a "careful consideration of the individual arrestee's circumstances" may a court conclude,

5

based on "clear and convincing evidence," that either pretrial detention or unaffordable bail may be imposed.  (*Id.* at p. 156; see *In re Kowalczyk*, *supra*, 85 Cal.App.5th at p. 690].)

A court's reasons for imposing pretrial detention or unaffordable bail may not be implied; rather, a court making such a determination is obliged to "set forth the reasons for its decision on the record and to include them in the court's minutes."  (*Humphrey*, *supra*, 11 Cal.5th at p. 155; see *In re Harris* (2021) 71 Cal.App.5th 1085, 1105 [trial courts must "separately state and identify their reasons for finding that less restrictive alternatives to detention" are insufficient] (*Harris*), review granted Mar. 9, 2022, S272632.)  Due process requires as much.  (*Humphrey*, *supra*, at p. 155.)

Because the court's decision called for an exercise of judgment based on the record before it, we review for an abuse of discretion.  (See *In re White* (2020) 9 Cal.5th 455, 469.)  The court's discretion "must be exercised within the confines of the applicable legal principles."  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Here, the record of the bail review hearing contains no indication that the trial court considered either what bail Berthelotte could afford or the adequacy of nonfinancial conditions of release.  It did not, for instance, weigh the concern that Berthelotte "is a threat to the alleged victim" against Berthelotte's compliance with the protective order prohibiting any contact with her.  It also did not expressly state why Berthelotte's flight risk due to the "stakes being raised" would not have been reasonably addressed by

6

electronic monitoring or supervision by pretrial services. Rather, it jumped from considering flight risk and public safety to a bare conclusion that $1 million bail was necessary, only concluding (by implication) that both nonfinancial release conditions and affordable bail were insufficient. That jump contravenes *Humphrey* and was therefore an abuse of discretion. (See also *Harris*, *supra*, 71 Cal.App.5th at p. 1105 [conditionally vacating bail order where trial court "did not actually address any less restrictive alternatives to pretrial detention and did not articulate its analytical process as to why such alternatives could not reasonably protect the government's interests"], review granted; *In re Brown* (2022) 76 Cal.App.5th 296, 307 (*Brown*) [vacating bail order where trial court "failed to address any of the specific nonfinancial conditions proposed by [petitioner] or to indicate, even in general, why nonfinancial conditions of release . . . would be insufficient to protect the victims or the public or obviate the risk of flight"].)

The People[2] contend that the trial court was statutorily required to find that unusual circumstances exist before deviating from the bail schedule and that Berthelotte's proffered evidence was unsubstantiated and therefore insufficient. However, blind

---

[2] Our initial order to show cause was directed at the District Attorney even though neither the District Attorney nor the People was holding Berthelotte in custody. (See § 1477.) The District Attorney then filed what it called an "Invited Return" and called itself an "Invited Participant" while noting that Berthelotte's custodian was still not a party. We issued an opinion on February 15, 2023 granting Berthelotte relief, and the People filed a petition for rehearing the next day. We granted the petition, vacated the opinion, and ordered the Riverside County Sheriff, Berthelotte's custodian, to show cause why relief should not be granted. The Riverside County Sheriff filed a one-sentence response that stated that it would operate in accordance with court orders, raising no arguments nor joining in arguments made. Counsel informed the court that the Sheriff did not wish to orally argue. We thus consider the People's arguments here.

reliance on a bail schedule is not permissible after *Humphrey*. "Under *Humphrey* the amount specified in the bail schedule (or any other amount of bail, for that matter) is appropriate only if the court first determines the arrestee can afford to post it." (*Brown*, *supra*, 76 Cal.App.5th at p. 307.) And here, at the bail review hearing, the trial court never determined on the record one way or the other what bail Berthelotte could afford.[3] Thus, we need not consider the evidentiary burdens and standards for determining ability to pay bail; the trial court's decision violated *Humphrey* regardless of whether Berthelotte can actually afford the amount set by the bail schedule.

In sum, Berthelotte is entitled to a new hearing at which the trial court considers, on the record, what amount of bail Berthelotte can afford and, if it decides to either set bail at an unaffordable amount or deny bail altogether, why less restrictive alternatives would not reasonably protect the public and the victim or reasonably assure his presence at trial. Because we find that Berthelotte is entitled to another bail review hearing under *Humphrey*, we need not, and do not, address his claims of vindictive prosecution.[4]

---

[3] At the 2021 arraignment, the trial court assumed that Berthelotte was indigent.

[4] In its return and at oral argument, the People contended that we should deny the petition because it was never directed to the warden holding Berthelotte in custody. *Brown* recently reiterated that a writ of habeas corpus is the appropriate vehicle to challenge the denial of bail. (*Brown*, *supra*, 76 Cal.App.5th at p. 301.) That case construed a petition for a writ of mandate as a petition for a habeas writ and ordered a new bail hearing even though, like here, the writ was opposed by the District Attorney, not the Attorney General's office. (*Ibid*.) The procedure here was thus not legally inappropriate under that authority, and, practically, we are not ordering the warden to take any action here. At this stage in the proceedings, and given Berthelotte's clear entitlement to relief, we see no reason to deny the petition regardless of what procedure

*[footnote continued on next page]*

## DISPOSITION

The petition is granted.  The Riverside Superior Court is directed to vacate its order setting bail at $1 million and thereafter hold a new hearing to consider Berthelotte's bail in a manner that is consistent with *Humphrey* and this court's opinion.

We decline Berthelotte's other requests for relief, including his request for release on his own recognizance.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

FIELDS
J.

---

our division would adopt as preferred.  (See § 1484 [court may grant any relief "as the justice of the case may require"].)

9