Filed 12/2/21  P. v. American Surety Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AMERICAN SURETY COMPANY,<br><br>    Defendant and Appellant. | G060408<br><br>(Super. Ct. No. 19CV002754)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Monterey County, Timothy P. Roberts, Judge.  Affirmed.

        Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh, for Defendant and Appellant.

        Leslie J. Girard, County Counsel, Susan K. Blitch, Assistant County Counsel, and William M. Litt, Deputy County Counsel, for Plaintiff and Respondent.

American Surety Company (Surety), acting through its agent Bail Hotline Bail Bonds, posted a $100,000 bond for the pretrial release of Angel Alonzo Zavala. After Zavala failed to appear at a subsequent pretrial hearing, the bond was forfeited, and the court subsequently entered summary judgment against Surety.

Surety raises two issues on appeal. First, Surety contends we should "set aside the summary judgment, vacate the forfeiture and exonerate bail because bail was set based on an unconstitutional order and in violation of [Zavala's] due process rights . . . ." Surety's contention Zavala's bail was set unconstitutionally is based on a case decided more than a year after the trial court set Zavala's bail—*In re Humphrey* (2018) 19 Cal.App.5th 1006 (*Humphrey I*), review granted May 23, 2018, ordered to have partial precedential effect August 26, 2020, S247278, affirmed (2021) 11 Cal.4th 135.[1] In *Humphrey I*, the Court of Appeal held due process requires a court consider public and victim safety, a criminal defendant's ability to pay, and other "individualized factors" when determining whether a defendant should be admitted to bail and the amount necessary to secure the defendant's appearance in court. (*Humphrey I, supra,* 19 Cal.App.5th at p. 1044.)

The same argument Surety advances here was first rejected in *People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891 (*Accredited 2019*) and has since been rejected in *People v. North River Ins. Co.* (2020) 48 Cal.App.5th 226 (*North River*), *People v. Financial Casualty & Surety, Inc.* (2021) 64 Cal.App.5th 405 (*Financial Casualty*), and *People v. Accredited Surety & Casualty Co., Inc.* (2021) 65 Cal.App.5th 122 (*Accredited 2021*). Finding these cases persuasive, we reject Surety's argument the bail forfeiture must be vacated.

---

[1] After briefing was completed in this appeal, the Supreme Court issued its decision in *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey II*), which is discussed *post*.

Surety's second argument is more difficult to comprehend. Surety contends the bail contract between Zavala and the state was unconscionable, that "even if the bail contract had been properly formed, it would be unconscionable to enforce" it, and therefore, the court cannot enforce the forfeiture against Surety. Agreeing with *Financial Casualty, supra*, 64 Cal.App.5th at pages 416-417, we conclude Surety forfeited any claim of unconscionability by failing to raise it in the trial court, and even if preserved, the claim is without merit. Accordingly, we affirm the judgment.

FACTS

In November 2016, Zavala was charged with attempted forcible rape, sexual battery by restraint, false imprisonment by violence, and vandalism. At arraignment, the court set bail at $100,000, without considering Zavala's ability to pay. Zavala subsequently appeared in court in custody on five occasions. There is no indication in our record Zavala ever objected to the bail amount, requested a bail review hearing, or requested a reduction in his bail based on his individual circumstances, including his ability to pay.

In March 2017, Surety executed a $100,000 bail bond for Zavala's release from custody. The bond expressed Surety's undertaking that Zavala would appear in court or Surety would pay $100,000 to the State of California. The bond also included Surety's agreement that if forfeiture was ordered by the court, judgment could be summarily made and entered against Surety, as provided in Penal Code sections 1305 and 1306.[2]

Zavala was released from custody and made multiple court appearances while out on bail. But in November 2017, Zavala failed to appear. The court issued a bench warrant, and a notice of forfeiture was mailed to Surety that month. In December

---

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

2018, the court granted Surety's motion to extend the appearance period to April 2019 under section 1305.4.[3]

In April 2019, Surety moved the court for an order vacating the forfeiture, exonerating bail, and returning any money paid with interest. In its motion, Surety argued Zavala's bail was unconstitutionally set, and therefore, the bond was void and the court lacked jurisdiction to order the bail forfeited. Following a hearing, the trial court denied the motion. The court indicated for purposes of its analysis, it assumed Surety had standing to argue the bail was unconstitutionally set and assumed, "without agreeing[,] that the [c]ourt failed to give [Zavala] a [c]onstitutionally valid due process review, when it set the original $100,000 bail." The court, nonetheless, rejected Surety's argument, explaining: "It does not matter how the amount of bail was determined . . . . They either did or did not agree to post the bail amount. The facts they reviewed were accurate and the process was transparent. [¶] The surety cannot bootstrap [its] failed risk assessment with a completely separate issue of how the bail was determine[d] for purposes of avoiding their agreement, which all parties entered into in good faith." In July 2019, the court granted summary judgment, ordering Surety to pay the amount of the bond, court costs, attorney fees, and interest. Surety appealed.

## DISCUSSION

### I. *Void Claim*

Surety contends the trial court erred by denying its motion to vacate the forfeiture and urges us to "set aside the summary judgment, vacate the forfeiture and exonerate bail." In a two-step analysis, Surety asserts: (1) Zavala's bail was not set in compliance with the constitutional and statutory requirements discussed in *Humphrey I*, *supra*, 19 Cal.App.5th 1006; and (2) because the court used a constitutionally inadequate

---

[3] "The period in which a surety must seek to vacate a bail forfeiture is often referred to as 'the appearance period.' [Citation.]" (*People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1217, fn. 3.)

4

process to determine Zavala's bail, the penalty clause of the bail contract is void. Even if we assume Surety is correct about the first step, Surety's argument faulters at the second.

A. *Applicable Legal Principles Concerning Bail*

"'While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.] "The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court." [Citations.] . . . Nevertheless, the "bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'" [Citation.]" (*Financial Casualty, supra*, 64 Cal.App.5th at p. 411.)

The statutory scheme governing bail bond forfeitures is found in section 1305 et seq., and a trial court must carefully follow these provisions. (*People v. Aegis Security Ins. Co.* (2005) 130 Cal.App.4th 1071, 1074.) "When a criminal defendant for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. [Citation.] The surety that posted the bond then has a statutory 'appearance' period in which to either produce the accused in court and have the forfeiture set aside, or demonstrate other circumstances requiring the court to vacate the forfeiture. [Citations.]" (*Financial Casualty, supra*, 64 Cal.App.5th at p. 411.) "When a bond is forfeited and the appearance period lapses without forfeiture having been set aside, the court 'shall enter a summary judgment' in the amount of the bond plus costs. [Citation.]" (*Ibid.*)

Surety does not contend the trial court failed to follow the statutory scheme for bail bond forfeitures. Instead, Surety's argument focuses on the process used in setting bail in the collateral criminal proceeding and the impact of any irregularities in that process on its bail contract with the state. Surety contends "the procedures necessary to ensure [Zavala received] due process were not followed when" the court set Zavala's

5

bail because the court did not inquire as to his ability to pay or whether any conditions other than bail would secure his appearance in court. To provide some background and context for this portion of Surety's argument, we briefly discuss the Supreme Court's recent decision in *Humphrey II, supra*, 11 Cal.5th 135.

B. *The Humphrey Cases*

In *Humphrey II*, our Supreme Court held California's "common practice of conditioning" an arrestee's release from custody pending trial "solely on whether an arrestee can afford bail is unconstitutional." (*Humphrey II, supra*, 11 Cal.5th at p. 143.) There, the court first set defendant's bail at $600,000 based on the bail schedule. (*Id.* at p. 144.) After defendant requested a formal bail hearing, the court reduced bail to $350,000, but defendant remained unable to afford bail. In determining the bail amount, the trial court did not consider defendant's ability to pay or whether nonfinancial conditions of release might address public safety concerns and assure his appearance in court. (*Id.* at p. 145.)

The Court of Appeal granted Humphrey's petition for writ of habeas corpus, reversed the trial court's bail determination, and directed the trial court to conduct a new bail hearing. (*Humphrey I, supra*, 19 Cal.App.5th at pp. 1014, 1016.) In doing so, the Court of Appeal held principles of due process and equal protection "dictate that a court may not order pretrial detention unless it finds either that the defendant has the financial ability but failed to pay the amount of bail the court finds reasonably necessary to ensure his or her appearance at future court proceedings; or that the defendant is unable to pay that amount and no less restrictive conditions of release would be sufficient to reasonably assure such appearance; or that no less restrictive nonfinancial conditions of release would be sufficient to protect the victim and the community." (*Id.* at p. 1026.)

The Supreme Court granted review on its own motion "to address the constitutionality of money bail as currently used in California as well as the proper role of public and victim safety in making bail determinations." (*Humphrey II, supra*,

11 Cal.5th at p. 147.)  Concluding it is unconstitutional "to incarcerate a defendant solely because he lacks financial resources" (*id.* at p. 149), the Supreme Court indicated trial courts "must consider an arrestee's ability to pay alongside the efficacy of less restrictive alternatives when setting bail." (*Id.* at p. 152.)  The Supreme Court affirmed the judgment of the Court of Appeal.  (*Id.* at p. 157.)

C. *Surety's Argument and Cases Rejecting It*

Surety contends the order setting Zavala's bail was unconstitutional because the trial court set bail without considering Zavala's ability to pay or other individualized factors as required by *Humphrey I.*  County counsel argues Surety lacks standing to assert Zavala's constitutional rights on his behalf and the amount of Zavala's bail was not set unconstitutionally.  Like the trial court, we will assume, without deciding, Surety has standing and that the court's determination of Zavala's bail without considering his ability to pay was unconstitutional.  (See, e.g., *People v. American Surety Co.* (2020) 55 Cal.App.5th 265, 270-271 [where trial court set defendant's bail without considering ability to pay and American Surety argued bail bond was therefore invalid, Court of Appeal assumed surety had standing to assert violation of criminal defendant's constitutional right].)  This propels our analysis forward to the question of what impact, if any, does the fact the court used a constitutionally inadequate process to set Zavala's bail have on the bail bond contract between Surety and the state.  The answer:  none.

As previously mentioned, this case is not the first to consider a contention that a *Humphrey* violation in setting bail barred the trial court from forfeiting the bond and entering summary judgment against a surety.  The argument Surety makes here has been raised multiple times, and each time, it has been rejected by our colleagues in other districts.

In *Accredited 2019*, a panel of the Third Appellate District held a trial court's failure to consider a defendant's ability to pay when setting bail did not invalidate the bail contract.  There, like here, the surety asserted, "[T]he bond should not be

7

forfeited because the procedures used to set the bail amount were defective." (*Accredited 2019, supra*, 34 Cal.App.5th at p. 898.) The Court of Appeal disagreed, explaining: "*Humphrey* [*I*] did not discuss the validity of a bail bond contract issued following a constitutionally inadequate hearing. . . . The rights addressed in *Humphrey*, and the procedural requirements announced by the court, are intended to guard defendants' liberty interests. [Citation.] Nothing in *Humphrey* or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed." (*Ibid.*) The Court of Appeal noted the statutory requirements for setting bail address "'the procedure for the release of a defendant from custody upon bail'" (*ibid.*) and "were not intended to protect the surety on the bail bond" (*id.* at pp. 898-899). Consistent with a line of cases addressing "'[d]efects and irregularities . . . in the proceedings preliminary to the taking of bail'" (*id.* at p. 898), the Court of Appeal determined the surety forfeited "any procedural irregularities in the bail setting hearing when it 'assume[d] its obligations . . . at the time of the execution of the bond.' [Citations.]" (*Ibid.*) The *Accredited 2019* court concluded, "[N]oncompliance with the procedural requirements for setting bail 'have no legal effect on the forfeiture of bail upon defendant's failure to appear for sentencing.'" (*Ibid.*)

In *North River*, the Second Appellate District, Division Two also rejected the argument "that the trial court's failure to inquire into defendant's ability to pay when setting bail . . . rendered the bond (and hence the summary judgment) 'void.'" (*North River, supra*, 48 Cal.App.5th at p. 230.) After discussing the difference between void and voidable judgments, the *North River* court concluded "the trial court's summary judgment on the bond was not void." (*Id.* at p. 234.) The court explained: "That is because the trial court at all times had fundamental jurisdiction over the subject matter and the parties. The court had the jurisdiction over the subject matter when it followed the statutory procedures then in effect when setting the bail amount for defendant [citations], releasing defendant on bail once the surety posted a bond in the bail amount

8

[citations], declaring the bond forfeited in open court when defendant did not appear as ordered and had no sufficient excuse for his nonappearance [citation], and entering summary judgment once defendant was not returned to custody by the expiration of the appearance period [citation]. [Citation.] The court also had jurisdiction over the surety once the surety posted its bond. [Citation.]" (*Ibid.*) The *North River* court further indicated: "The trial court's failure to anticipate and adhere to *Humphrey* [*I*] in setting the bail amount" (*id*. at p. 234) "would, at best, render the bail order voidable *as to the defendant, not as to the surety*" (*id.* at p. 235).

The Court of Appeal in *North River* discussed the different contractual positions of the parties in bail proceedings, explaining: "Bail is a function of 'two different contracts between three different parties'—namely, (1) a contract between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and his promise to pay the full amount of the bond in the event of his nonappearance, and (2) a contract between the surety and the People under which the surety ""''act[s] as a guarantor of the defendant's appearance in court under risk of forfeiture of the bond."''' [Citations.]' [Citations.]" (*North River, supra*, 48 Cal.App.5th at p. 235.)

Relying on Supreme Court precedent that bail bond proceedings "'are independent from and collateral to'" criminal prosecutions, the *North River* court concluded: "The independence of bail proceedings from the underlying criminal prosecution is why any noncompliance with *Humphrey* [*I*] during the prosecution does not affect—let alone eviscerate—the trial court's jurisdiction over the collateral bail proceedings. Time and again, courts have ruled that errors in a trial court's setting of bail during the criminal prosecution do not let the surety off the hook in the collateral bail proceedings. [Citations.]" (*North River, supra*, 48 Cal.App.5th at p. 235.) To support this conclusion, the court cited a "wall of precedent" and noted the remedy for

9

noncompliance with *Humphrey I* is a new bail hearing, "not defendant's immediate release or the invalidation of any and all subsequently issued bonds." (*Id.* at p. 236.)

In *Accredited 2021*, a case before the Fifth Appellate District, the factual scenario was slightly different as defendant's bail was set under the early-out provisions of the bail statutory scheme. (*Accredited 2021, supra*, 65 Cal.App.5th at pp. 128-129.) The Court of Appeal first rejected the surety's facial challenge to the statutory provisions governing the forfeiture of bail under the early-out method of release. (*Id.* at pp. 129-130.) Then as "a separate and independent ground for" affirming the summary judgment against the surety (*id.* at p. 133), the Court of Appeal joined with *Accredited 2019* and *North River* and "adopt[ed] the legal principle that a constitutional violation in setting bail (which also sets the amount of the forfeiture) does not render the bail bond unenforceable as to the surety" (*Accredited 2021, supra*, 65 Cal.App.5th at p. 134). Summarizing its reasoning, the *Accredited 2021* court indicated: "[T]he Surety explicitly agreed to the forfeiture procedures set forth in sections 1305 and 1306 and to the amount of the consent judgment. When such a contract between a surety and the government is breached, the bond should be enforced." (*Ibid.*) Agreeing with holdings in *Accredited 2019* and *North River*, the Court of Appeal concluded "a violation of the criminal defendant's constitutional rights does not free the surety from its obligations under the bail bond." (*Accredited 2021, supra*, 65 Cal.App.5th at p. 134.)

In *Financial Casualty*, Division Four of the Second Appellate District adopted the reasoning in *North River* and rejected the same argument Surety presents here. (*Financial Casualty, supra*, 64 Cal.App.5th at p. 414.) The court also identified persuasive policy reasons for rejecting the surety's claim: "Moreover, policy considerations support holding Financial Casualty to its bargain. Granting Financial Casualty the relief it seeks would allow sureties like it 'to have their cake and eat it too.' [Citation.] '[W]e would be loath to sustain [the surety's] argument because it would produce the anomalous result that [it] would reap a windfall, keeping the bond premium

10

without running any risk of being held to account on the bond' in the event the bailee fails to appear.  [Citations.]"  (*Id.* at p. 415.)

Surety asserts *Accredited 2019* and *North River* were wrongly decided and misunderstood the nature of bail contracts and a surety's duties and responsibilities under bail contracts.  According to Surety:  "When the proper nature of the bail contract is understood neither the defendant, nor the surety that guaranteed the defendant's contract with the State, are liable to the State for a bail debt that was not fixed by a reasonable method."

This same assertion was addressed in *Financial Casualty, supra*, 64 Cal.App.5th at page 417, footnote 5.  There, the Court of Appeal rejected the contention, explaining:  "Financial Casualty spends considerable time in its briefs arguing that *North River* and similar cases misunderstood the contractual relationships between a criminal defendant, the surety, and the state.  In this regard, Financial Casualty's briefs are long on inapposite authority, and short on case-specific analysis.  In fact, Financial Casualty *properly* characterized the relevant contractual relationships in its motion to set aside summary judgment:  'As between the surety and the [defendant], the surety promises to arrange for the [defendant's] conditional liberty in exchange for the [defendant's] promise of payment.  As between the surety and the [state], the surety promises to produce the person of the [defendant], or a sum certain in his stead, at time of trial in exchange for the [state's] promise to permit the surety to arrange for the [defendant's] conditional liberty while at the same time exercising constructive custody over him.  [Citation.]"  (*Ibid.*)

Below, in its motion to vacate the forfeiture and exonerate bail, Surety characterized the contractual relationships exactly as Financial Casualty did in its motion to set aside the summary judgment.  (*Financial Casualty, supra*, 64 Cal.App.5th at p. 417, fn. 5.)  This description is consistent with *North River*'s discussion of the contractual relationships between the defendant, surety, and state.  (*North River, supra*, 48

11

Cal.App.5th at p. 235.)  Thus, Surety's argument *North River* misunderstands the nature of the bail contract is without merit.

We find persuasive the reasoning in *Accredited 2019*, *North River*, *Accredited 2021*, and *Financial Casualty* and, like them, conclude any *Humphrey* error in setting the amount of a defendant's bail does not invalidate a subsequently executed bond, forfeiture of that bond, or judgment entered on the bond.  Because the procedure for setting the amount of bail is independent from and conducted prior to any contract between the surety and the state, any error in the bail setting proceeding prior to execution of the bond does not invalidate the bond or subsequent judgment on that bond.  Here, the amount of Zavala's bail had already been set when Surety contracted with the state, and Surety was free to accept or reject the offer of contract based on that amount.  Any violation of Zavala's rights when his bail was set did not invalidate the bond or render void the subsequent summary judgment against Surety.

II.  *Unconscionability Claim*

Surety's second argument contains a vague unconscionability claim.  Surety captions this argument as "Even if the bail contract had been properly formed it would be unconscionable to enforce it."  (Capitalization & boldface omitted.)  After briefly discussing general principles of contract unconscionability, the argument mostly focuses on policy concerns relating to pretrial detention and bail.  Surety concludes the argument by asserting:  "Since the court is allowed to limit the application of 'any unconscionable clause,' if the court finds that this contract was legal and formed it may reduce the penalty to the state[']s actual damages caused by the breach, rather than imposing the full amount of the unconstitutionally calculated penalty."

In its argument, Surety contends the bail contract between Zavala and the state is procedurally unconscionable, and therefore, the penalty provision should not be enforced.  But there are two fatal flaws with this contention.  First, Surety forfeited its argument by failing to raise an unconscionability claim in the trial court.  (*Financial*

12

*Casualty, supra*, 64 Cal.App.5th at p. 416.) In *Financial Casualty*, the surety also raised an unconscionability claim for the first time on appeal. (*Ibid.*) Concluding the claim was forfeited, the Court of Appeal explained: "The failure of [the surety] to raise the issue below deprived the People of notice of any need to develop the record with evidence bearing on unconscionability. [Citations.]" (*Ibid.*) Here too, the People have been deprived of an opportunity to present evidence addressing Surety's claim of an unconscionable contract, rendering the claim forfeited.

Second, even if not forfeited, Surety's contention is meritless as it concerns a nonexistent contract. As discussed above, there is no bail contract between a defendant and the state. The *Financial Casualty* court explained: "[T]he bail-setting order was not a contract because it did not require [Zavala's] consent. [Citations.] In the bail bond context, the defendant and the state do not contract with each other; rather, they each contract with the surety. [Citation.]" (*Financial Casualty, supra*, 64 Cal.App.5th at p. 417.) Surety has not identified any unconscionable unfairness in the contract between it and the state, and therefore, its claim fails.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


GOETHALS, J.