Filed 3/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re | B313533 |
| KERNELL BROWN, | (Los Angeles County Super. Ct. No. BA480693) |
| on Habeas Corpus. | |

ORIGINAL PROCEEDINGS on petition for writ of habeas corpus.  Lynne M. Hobbs, Judge.  Petition granted.

Kernell Brown, in pro. per.; and John P. Dwyer, under appointment by the Court of Appeal, for Petitioner.

George Gascón, District Attorney, Tracey Whitney, Grace Shin and Elizabeth Marks, Deputy District Attorneys, for the People.

———————————————

In *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*) the Supreme Court held conditioning pretrial release from custody solely on whether an arrestee can afford bail is unconstitutional. When nonmonetary conditions of release would be inadequate to protect public and victim safety and to ensure an arrestee's appearance at trial and a financial condition is necessary, the trial court "must consider the arrestee's ability to pay the stated amount of bail—and may not effectively detain the arrestee 'solely because' the arrestee 'lacked the resources' to post bail." (*Id*. at p. 143.)  When no option other than refusing pretrial release can reasonably protect the State's compelling interest in victim and community safety, the *Humphrey* Court continued, "a court must first find by clear and convincing evidence that no condition short of detention could suffice and then ensure the detention otherwise complies with statutory and constitutional requirements." (*Ibid*.)  What the trial court may not do is make continued detention depend on the arrestee's financial condition. Yet that is precisely the effect of the superior court's order denying Kernell Brown's motion, filed after the decision in *Humphrey*, to reduce his $2.45 million bail to an amount he could afford.

Brown remains in custody awaiting trial on charges he sexually assaulted two children.  We deem his petition for writ of mandate challenging the order denying his motion to reduce bail a petition for writ of habeas corpus; grant the petition; and order the trial court to hold a new hearing at which it is to consider nonmonetary alternatives to money bail, determine Brown's ability to afford the amount of money bail if it is to be set, and follow the procedures and make the findings necessary for a valid order of detention if no conditions for pretrial release will

adequately protect the government's interests in the safety of potential victims and the public generally or the integrity of the criminal proceedings. (See *Humphrey*, *supra*, 11 Cal.5th at p. 146.)

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Initial Bail Proceedings*

Brown was charged in a felony complaint on August 28, 2019 with one count of oral copulation or sexual penetration of a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b))[1] and two counts of committing a lewd act on a child under age 14 (§ 288, subd. (a)). It was specially alleged that Brown had committed an offense against more than one victim within the meaning of California's one strike law. (§ 667.61, subds. (b) & (e).) At his initial arraignment Brown's bail was set at $1.45 million. An amended felony complaint containing the same three charges and one strike allegation was filed October 30, 2019. Brown's bail was increased to $3.45 million.

An information was filed June 8, 2020, again containing three counts of sexual abuse involving two children with the special one strike allegation. Brown was arraigned on June 18, 2020, pleaded not guilty to the charges and denied the special allegation. On August 20, 2020 Brown's counsel orally moved to reduce bail. After consultation with the prosecutor, the trial court reduced Brown's bail to $2.45 million.

---

[1]     Statutory references are to this code.

2. *Brown's Post-*Humphrey *Motion To Reduce Bail*

On May 13, 2021, several weeks after the Supreme Court's decision in *Humphrey*, *supra*, 11 Cal.5th 135, Brown, now representing himself, moved for release on his own recognizance or, alternatively, to have his bail reduced to no more than $1,000. In his motion Brown admitted "the crimes he is being accused of are serious and violent," but argued he was indigent and would accept nonfinancial conditions of release, including electronic monitoring, community housing, home detention, treatment and education programs, a pretrial case manager and a protective order. Brown also acknowledged he had a criminal record but insisted his prior convictions were for nonviolent or nonserious offenses. "[T]he last conviction was in 2013," he explained, "which was a call to answer warrant from 2005." Brown attached a declaration attesting to his indigency and lack of current employment and averred he had no future prospects of income.

The trial court heard argument on Brown's motion on June 17, 2021. At the outset of the hearing the court stated *Humphrey* was inapplicable to Brown's case because *Humphrey* did not apply to a case where the defendant was charged with a serious and violent felony. Further explaining its understanding of the Supreme Court's decision, the trial court said, even when *Humphrey* applied, it required consideration of an arrestee's financial condition only if the court first determined there existed unusual circumstances justifying a deviation from the approved bail schedule.

The prosecutor agreed with the court that *Humphrey* "did not overrule [section] 1275," which authorizes setting bail below the amount established by the county bail schedule for serious or violent felonies only upon a finding of unusual circumstances

4

(§ 1275, subd. (c)), and argued there were no such unusual circumstances in this case. After detailing the factual allegations supporting the charges against Brown, the prosecutor continued, "Mr. Brown has quite a criminal history, including criminal history in other states. He mentioned in the motion that he just filed that the last time he was brought into the criminal justice system it was because of a warrant from years before that he had not responded to or taken care of." The prosecutor also observed that a life sentence, as Brown faced, "tend[s] to make people more likely to flee those consequences" and noted the Los Angeles County Department of Children and Family Services had removed a number of young children from Brown's home because the Department did not believe it was safe for them to reside there.

Asked to identify any unusual circumstances that would justify deviation from the bail schedule, Brown insisted he had strong ties to the Los Angeles area and was not a flight risk. He asked the court to consider a nonfinancial conditional release, including electronic monitoring with GPS tracking and a pretrial case manager. He explained he had established long-term residential housing in the area through a local community housing facility for veterans and had that organization's support pending trial of his case. He also stated his willingness to submit to home detention, to enroll in a court-ordered treatment or education program and to obey all protective orders of the court to keep away from either of the two victims in this case.

The trial court ultimately concluded no unusual circumstances justified a deviation from the bail schedule and denied Brown's motion. Explaining its ruling the court stated, "Even if *Humphrey* applies to abrogate [section] 1275, the court

5

finds that there are no lesser means of protecting the public, in that this seemed to be done in the home with family members, which the court can't stop family members from seeing the defendant.  The court is also mindful of the warrant that was outstanding where the defendant did not obey court orders.  The court is mindful of the licensing of Mr. Brown [as a truck driver], as well as the seriousness of the crime."

### 3. *Brown's Petition for Writ of Mandate*

On July 12, 2021 Brown petitioned this court for a writ of mandate to overturn the trial court's order denying his motion to reduce bail.  Brown argued the court had failed to follow *Humphrey* and "did not rely on 'clear and convincing' evidence . . . in denying petitioner's formal request."  After receiving an informal response from the Los Angeles County District Attorney on behalf of the People, as real party in interest, we issued an order to show cause and appointed counsel for Brown.  The district attorney filed a return, and Brown through counsel filed a reply.

We have elected to treat Brown's petition for writ of mandate as a petition for writ of habeas corpus (see *Berman v. Cate* (2010) 187 Cal.App.4th 885, 892 ["courts have inherent power to treat a petition for writ of mandate as one for habeas corpus"]; see also *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 ["[t]he label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading"]), which is the appropriate vehicle for raising questions concerning the legality of a grant or denial of bail.  (See *In re Harris* (2021)

71 Cal.App.5th 1085, 1094, review granted Mar. 9, 2022,
S272632; *In re McSherry* (2003) 112 Cal.App.4th 856, 859-860.)

# DISCUSSION

### 1. *Standard of Review*

"[W]e review a trial court's ultimate decision to deny bail
for abuse of discretion.  [Citations.]  Under this standard, a trial
court's factual findings are reviewed for substantial evidence, and
its conclusions of law are reviewed de novo.  [Citation.]  An abuse
of discretion occurs when the trial court, for example, is unaware
of its discretion, fails to consider a relevant factor that deserves
significant weight, gives significant weight to an irrelevant or
impermissible factor, or makes a decision so arbitrary or
irrational that no reasonable person could agree with it."
(*In re White* (2020) 9 Cal.5th 455, 469-470.)  We apply the same
abuse of discretion standard to review the superior court's
decision to increase or reduce bail.  (*In re Avignone* (2018)
26 Cal.App.5th 195, 204; *In re Christie* (2001)
92 Cal.App.4th 1105, 1106.)

### 2. *Governing Law*

#### a. *Pertinent constitutional and statutory provisions*

Article I, section 12 of the California Constitution provides,
"A person shall be released on bail by sufficient sureties," except
for "(a) Capital crimes when the facts are evident or the
presumption great; [¶] (b) Felony offenses involving acts of
violence on another person, or felony sexual assault offenses on
another person, when the facts are evident or the presumption
great and the court finds based upon clear and convincing
evidence that there is a substantial likelihood the person's
release would result in great bodily harm to others; or [¶]
(c) Felony offenses when the facts are evident or the presumption

7

great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released."  (See *In re York* (1995) 9 Cal.4th 1133, 1139-1140 ["Article I, section 12, of the California Constitution establishes a person's right to obtain release on bail from pretrial custody, identifies certain categories of crime in which such bail is unavailable, prohibits the imposition of excessive bail as to other crimes, sets forth the factors a court shall take into consideration in fixing the amount of the required bail, and recognizes that a person 'may be released on his or her own recognizance in the court's discretion'"].)

Article I, section 28, subdivision (f)(3), of the Constitution, part of the Victims' Bill of Rights, provides in somewhat different language, "A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great.  Excessive bail may not be required.  In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  Public safety and the safety of the victim shall be the primary considerations. [¶] . . . [¶]  Before any person arrested for a serious felony may be released on bail, a hearing may be held before the magistrate or judge, and the prosecuting attorney and the victim shall be given notice and reasonable opportunity to be heard on the matter."[2]

---

[2]  Because the case before it did not involve an order denying bail, the Supreme Court in *Humphrey* did not consider "the question of how two constitutional provisions addressing the

These constitutional provisions are implemented, in part, by section 1275, which provides in subdivision (a)(1) that, "in setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration." Section 1275, subdivision (c), states, "Before a court reduces bail to below the amount established by the bail schedule approved for the county, . . . for a person charged with a serious felony, as defined in subdivision (c) of Section 1192.7, or a violent felony, as defined in subdivision (c) of Section 667.5, the court shall make a finding of unusual circumstances and shall set forth those facts on the record."

b. In re Humphrey

In the opening paragraphs of its opinion in *Humphrey*, the Supreme Court stated, in principle, "pretrial detention should be reserved for those who otherwise cannot be relied upon to make court appearances or who pose a risk to public or victim safety." But, the Court explained, "it's a different story in practice: Whether an accused person is detained pending trial often does not depend on a careful, individualized determination of the need to protect public safety, but merely—as one judge observes—on the accused's ability to post the sum provided in a county's uniform bail schedule." (*Humphrey*, *supra*, 11 Cal.5th at p. 142.)

denial of bail . . . can or should be reconciled, including whether these provisions authorize or prohibit pretrial detention of noncapital arrestees outside the circumstances specified in section 12, subdivisions (b) and (c)." (*Humphrey*, *supra*, 11 Cal.5th at p. 155, fn. 7.)

With that practical observation as keynote, the Supreme Court undertook a fundamental reexamination of the use of money bail as a means of pretrial detention.

Humphrey, who had four prior serious felony (strike) convictions for robbery or attempted robbery, was charged with first degree residential robbery and burglary against an elderly victim, inflicting injury on an elder adult and misdemeanor theft from an elder adult. (*Humphrey, supra,* 11 Cal.5th at pp. 143-144.) At the time of the offenses Humphrey was 66 years old. At his arraignment the trial court denied Humphrey's request for release on his own recognizance and set bail at $600,000 in accordance with the governing bail schedule as recommended by the prosecutor. (*Id.* at p. 144.) The court, although acknowledging Humphrey's ties to the community and the age of his prior convictions, cited the seriousness of the crime and the vulnerability of the 79-year-old victim. (*Ibid.*)

Humphrey challenged the ruling setting bail by filing a motion for a formal bail hearing under section 1270.2 with an accompanying request for release on his own recognizance. (*Humphrey*, *supra*, 11 Cal.5th at p. 144.) Denying the motion for own-recognizance or supervised release, the court found unusual circumstances to warrant a deviation from the bail schedule based on Humphrey's willingness to participate in a residential treatment program and reduced bail to $350,000. (*Id.* at p. 145.) Humphrey's public defender cautioned that Humphrey was too poor "'to make even $350,000 bail'" and would therefore be unable to participate in the required residential treatment program. (*Ibid.*) The trial court did not comment on Humphrey's inability to afford bail or consider whether nonfinancial conditions of

release could meaningfully address public safety concerns or flight risk.  (*Ibid.*)

Humphrey filed a petition for a writ of habeas corpus in the court of appeal, contending that requiring money bail as a condition of release at an amount the accused cannot pay was the functional equivalent of a pretrial detention order, which could only be justified if the state established detention was necessary to further a compelling state interest.  (*Humphrey*, *supra*, 11 Cal.5th at pp. 145-146.)  The court of appeal granted habeas corpus relief, reversed the bail determination and directed the trial court to conduct a new bail hearing.  In ordering the new hearing the court of appeal held, "'[A] court may not order pretrial detention unless it finds either that the defendant has the financial ability but failed to pay the amount of bail the court finds reasonably necessary to ensure his or her appearance at future court proceedings; or that the defendant is unable to pay that amount and no less restrictive conditions of release would be sufficient to reasonably assure such appearance; or that no less restrictive nonfinancial conditions of release would be sufficient to protect the victim and the community.'"  (*Id.* at p. 146.)

Although no party had petitioned for review, the Supreme Court granted review on its own motion "to address the constitutionality of money bail as currently used in California as well as the proper role of public and victim safety in making bail determinations."  (*Humphrey*, *supra*, 11 Cal.5th at pp. 146-147.)  Speaking directly to that issue, the *Humphrey* Court held, "[I]f a court does not consider an arrestee's ability to pay, it cannot know whether requiring money bail in a particular amount is likely to operate as the functional equivalent of a pretrial detention order.  Detaining an arrestee in such circumstances

11

accords insufficient respect to the arrestee's crucial state and federal equal protection rights against wealth-based detention as well as the arrestee's state and federal substantive due process rights to pretrial liberty." (*Id.* at p. 151.) Such pretrial detention, the Court continued, "is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interest." (*Id.* at pp. 151-152.)

To safeguard the constitutional rights it had identified and to effectuate its holding that courts must consider an arrestee's ability to pay and the efficacy of less restrictive alternatives when setting bail, the *Humphrey* Court outlined a required "general framework" for bail determinations. (*Humphrey*, *supra*, 11 Cal.5th at p. 152.) While the Court declined to "lay out comprehensive descriptions of every procedure by which bail determinations must be made," it emphasized that trial courts "must undertake an individualized consideration of the relevant factors. These factors include the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings." (*Id.* at pp. 156, 152.)

The *Humphrey* Court explained a trial court must first determine whether an arrestee is a flight risk or a danger to public or victim safety. If the arrestee does pose one or both of these risks, then the court should consider whether "nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial." (*Id.* at p. 154.) Although "no condition of release can entirely *eliminate* the risk that an arrestee may harm some member of the public," the Court observed, "[t]he experiences of those

jurisdictions that have reduced or eliminated financial conditions of release suggest that releasing arrestees under appropriate nonfinancial conditions—such as electronic monitoring, supervision by pretrial services, community housing or shelter, stay-away orders, and drug and alcohol testing and treatment [citations]—may often prove sufficient to protect the community." (*Ibid*.)

Having considered potential nonfinancial conditions, if the trial court nonetheless concludes money bail is "reasonably necessary" to protect the public and ensure the arrestee's presence at trial, then bail must be "set at a level the arrestee can reasonably afford" unless the court concludes, by clear and convincing evidence, that no nonfinancial condition in conjunction with affordable money bail can reasonably protect public safety or arrestee appearance. (*Humphrey*, *supra*, 11 Cal.5th at p. 154.) Quoting from the United States Supreme Court's decision in *United States v. Salerno* (1987) 481 U.S. 739, 755, the *Humphrey* Court emphasized, "While due process does not categorically prohibit the government from ordering pretrial detention, it remains true that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (*Humphrey*, at p. 155.)

3. *Brown Is Entitled to a New Bail Hearing That Complies with* Humphrey

Although aware of *Humphrey*, the trial court misunderstood its scope and, accordingly, deprived Brown of his right to a bail determination that complied with the Supreme Court's decision.

First, the court incorrectly stated *Humphrey* was inapplicable in cases in which the defendant had been charged

13

with a serious or violent felony. Nothing in *Humphrey*'s discussion of the constitutional constraints on the use of money bail suggests that limitation. To the contrary, Humphrey himself was charged with first degree robbery, a serious felony within the meaning of section 1192.7, subdivision (c)(19), and a violent felony within the meaning of section 667.5, subdivision (c)(5). (See *Humphrey*, *supra*, 11 Cal.5th at p. 145 ["[a]t the hearing, the prosecutor pointed out the trial court would need to find unusual circumstances to justify a deviation from the bail schedule because Humphrey was charged with robbery, a serious and violent felony"]; see also *In re Harris*, *supra*, 71 Cal.App.5th at p. 1102, review granted [analyzing case under *Humphrey* where defendant was charged with a serious and violent felony].)

Second, apparently recognizing that Brown could not afford to post bail in the sum of $2.45 million, the court ruled, "Even if *Humphrey* applies to abrogate [section] 1275, the court finds that there are no lesser means of protecting the public" and alleged victims because "the court can't stop family members from seeing the defendant." The trial court's use of an unreasonably high, unaffordable bail to protect the public and past victims from the defendant—that is, setting bail knowing full well that it was the equivalent of a pretrial detention order—is directly at odds with the requirements for a constitutionally valid bail determination as articulated in *Humphrey*.

As *Humphrey* makes clear, once an arrestee is deemed a flight risk or a danger to public or victim safety, the court is to consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial. (*Humphrey*, *supra*, 11 Cal.5th at p. 154; see *In re Harris*, *supra*,

71 Cal.App.5th at p. 1104, review granted ["*Humphrey* determined that principles of due process require the trial court to find, by clear and convincing evidence, that no less restrictive condition than detention can reasonably protect the interests in public or victim safety, and the arrestee's appearance in court"].) Here, Brown stated his willingness to submit to home detention with GPS monitoring and to obey all protective orders requiring him to stay away from the two victims.

The district attorney argues those nonfinancial conditions "cannot significantly alleviate the public safety concerns at issue because even if parameters are set that a defendant is not supposed to go beyond, they cannot be stopped in real time." As discussed, the *Humphrey* Court acknowledged that conditions upon release could not entirely eliminate any risk to public safety. However, rather than deny release in all cases, the Court instructed trial courts to "focus instead on risks to public or victim safety or to the integrity of the judicial process that are reasonably likely to occur." (*Humphrey, supra,* 11 Cal.5th at p. 154.) Here, there was no evidence proffered in the trial court to support the contention that harm to the public was reasonably likely to occur if Brown were released. The trial court failed to address any of the specific nonfinancial conditions proposed by Brown or to indicate, even in general, why nonfinancial conditions of release (such as a stay away or no contact order, home detention, electronic monitoring or surrender of Brown's Class A driver's license) would be insufficient to protect the victims or the public or obviate the risk of flight. On this record we cannot conclude there was sufficient evidence to support a finding by clear and convincing evidence that less restrictive

15

alternatives to detention could not reasonably protect the public or victim safety.

Third, compounding its misreading of *Humphrey*, after deciding nonfinancial conditions of release were inadequate and bail was reasonably necessary, the trial court stated *Humphrey* did not require it to consider Brown's financial condition and ability to pay unless it first determined there was reason to deviate from the approved bail schedule.[3] Accordingly, although Brown presented evidence of his limited financial resources, the trial court made no effort to evaluate his ability to secure his release from pretrial custody by posting bail at $2.45 million.

The court had it backwards: Under *Humphrey* the amount specified in the bail schedule (or any other amount of bail, for that matter) is appropriate only if the court first determines the arrestee can afford to post it. Otherwise, the Supreme Court explained, "requiring money bail in a particular amount is likely to operate as the functional equivalent of a pretrial detention order." (*Humphrey*, *supra*, 11 Cal.5th at p. 151.)

Far from limiting the requirement the court evaluate a defendant's financial status to situations in which it had already determined a downward departure from the bail schedule was warranted, the *Humphrey* Court broadly held the common practice of conditioning an arrestee's release from custody pending trial solely on whether an arrestee can afford bail is

---

[3] The court explained its understanding of *Humphrey*: "In *Humphrey*, the court did find unusual circumstances to deviate from the bail schedule, and because the court deviated from the bail schedule, it was decided in *Humphrey* that the court has to take into account the defendant's financial wherewithal to post bail."

16

unconstitutional.  (*Humphrey*, *supra*, 11 Cal.5th at p. 143.)
That is, under *Humphrey*, if the court properly determines
nonfinancial conditions are insufficient to protect the state's
interests, but that imposing a money bail condition (alone or in
combination with nonfinancial conditions) would adequately
protect the public and the victims and ensure the arrestee's
presence in court, the court must consider the individual
arrestee's ability to pay and "set bail at a level the arrestee can
reasonably afford."  (*Id*. at p. 151.)  If money bail set at that level
is not sufficient to protect the state's compelling interests, then
the trial court's only option is to order pretrial detention,
assuming the evidentiary record is sufficient to support the
findings necessary to justify such an order.

 Finally, in defense of the trial court's decision not to reduce
Brown's bail, the district attorney in the return argues there was
clear and convincing evidence presented to the trial court "that
there is a substantial likelihood that [Brown]'s release would
result in great bodily harm to others," as well as clear and
convincing evidence that Brown "could be a potential flight risk
given that he was in warrant status for 8 years from 2005 to 2013
and did not comply with the court orders in that matter for such
a long period of time."  That evidence, the district attorney
contends, "made a sufficient record to justify keeping [Brown]'s
bail as previously set at $2,450,000.00."  In other words, the
district attorney advocates for precisely the result the *Humphrey*
Court held to be unconstitutional—setting bail at an amount that
is impossible for the defendant to post given his financial
condition in order to keep him in custody pending trial.

 It may well be, as the district attorney argues, that "there
was no alternative to cash bail" and "nothing short of detention

17

can suffice" in this case. The Supreme Court in *Humphrey* recognized such cases exist. (See *Humphrey*, *supra*, 11 Cal.5th at p. 156.) Although it declined to address in detail the constitutional requirements for such a no-bail order, the fundamental constitutional principles the Court enunciated clearly mean that setting bail at an amount the court knows cannot be met, as here, is not the appropriate response in those situations. Rather, the trial court must be explicit that it is ordering pretrial detention and base its order on findings that "detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." (*Ibid*.)

Moreover, as the Supreme Court cautioned, the trial court's procedures for entering such an order for pretrial detention must comport "with other traditional notions of due process to ensure that when necessary, the arrestee is detained 'in a fair manner.' . . . Among those fair procedures is the court's obligation to set forth the reasons for its decision on the record and to include them in the court's minutes. . . . Such findings facilitate review of the detention order, guard against careless or rote decisionmaking, and promote public confidence in the judicial process." (*Humphrey*, *supra*, 11 Cal.5th at pp. 155-156; accord, *In re Harris*, *supra*, 71 Cal.App.5th at p. 1098, review granted ["[t]he court was obligated to provide a statement of reasons for the detention, included in writing in the court's minutes"].) Here, the trial court's minute order only reflects that Brown's motion was "filed, heard, argued and denied by the court."

In sum, because the trial court failed to comply with the requirements of *Humphrey* by modifying bail to an amount consistent with Brown's financial ability or adequately addressing the need for a pretrial detention order, Brown is entitled to a new hearing on his motion at which the court considers his financial resources and other relevant circumstances, as well as nonfinancial conditions as alternatives or in addition to money bail. If the court finds money bail is reasonably necessary to ensure Brown's future court appearances and the safety of the public and the victims, then bail must be set for an amount Brown can afford. Alternatively, if the court finds by clear and convincing evidence that there are no less restrictive means to satisfy those purposes, then it may enter a no-bail order. The court's findings and reasons for any such order must be stated on the record and included in a written order. (See *Humphrey*, *supra*, 11 Cal.5th at p. 146.)

## DISPOSITION

The petition is granted. The Los Angeles Superior Court is directed to vacate its order of June 17, 2021 denying Brown's motion for release on his own recognizance, nonfinancial conditions for release or reduction in bail and thereafter hold a new hearing at which the court considers Brown's motion in a manner that is consistent with the Supreme Court's decision in *Humphrey*, *supra*, 11 Cal.5th 135 and this court's opinion.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

19