Filed 3/25/26  P. v. Bracey CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085007 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD297255) |
| v. | |
| DIONTE KINDELL BRACEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Polly H. Shamoon, Judges.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Dionte Kindell Bracey was charged with carjacking (Pen. Code, § 215, subd. (a)) and inflicting great bodily injury (§ 12022.7, subd. (a)) for brutally assaulting an elderly man and taking his car.[1]

Bracey requested pretrial mental health diversion. The trial court denied the request after a hearing. Bracey then pleaded guilty as charged. The court sentenced him to eight years in prison based on the middle term of five years in prison for carjacking plus three years for the great bodily injury enhancement.

Bracey contends on appeal that the trial court erred in denying his request for mental health diversion after finding (1) he was not eligible for diversion because his mental health diagnoses did not contribute to the offense and (2) he was not suitable for diversion. We need not decide the first issue because we conclude substantial evidence supports the court's findings that he was not eligible for diversion and, thus, the court did not abuse its discretion in denying the request. We affirm the judgment.

BACKGROUND

Because the denial of pretrial mental health diversion is the sole issue on appeal, we draw the factual background from the exhibits submitted in support of and in opposition to the motion.

*Carjacking Incident*

After a night of drinking at a club with family members in May 2021, Bracey became "somewhat nasty," behaved erratically, and appeared "out of it." He wandered away from the group and later jumped out of a moving car driven by his girlfriend. When his girlfriend stopped and tried to get him

---

[1]     All undesignated statutory references are to the Penal Code.

back in the car, he tried to punch her. She left to get help from a family member, but they could not find him when they returned.

Bracey went to a convenience store, which he entered and exited numerous times over the period of an hour. He asked the clerk to use the phone but did not make a call, he challenged the clerk to fight, and he asked if the clerk had a vehicle. Bracey approached several people in the parking lot of the convenience store and approached or tried to tamper with vehicles in the lot. One driver left after seeing Bracey come toward the driver's truck with a "weird look" in his eyes.

Bracey watched an elderly man go into the convenience store. When the man left the store, Bracey followed the man back to his car. Bracey assaulted the man, punching him over 25 times in the head and stomping on his head more than five times. Bracey took the man's keys and drove away in the man's car, narrowly missing the man who was still on the ground. The man was severely injured.

Bracey reportedly awoke in a car he said he did not recognize in another city. He said he had no memory of anything that occurred after being at the club.

*Initiation of Criminal Case*

Nearly two years later, Bracey was identified as a suspect for carjacking in this case after the DNA from blood left at the convenience store was found to match Bracey's DNA taken following his arrest for an assault with a deadly weapon in another county.

An arrest warrant was issued in this case in January 2023. Bracey pleaded not guilty at arraignment in March 2023. He was held to answer the charge of carjacking with a great bodily injury enhancement after a preliminary hearing. He again pleaded not guilty.

3

*Request for Diversion*

Bracey requested pretrial mental health diversion, citing longstanding mental disorders, their role in the commission of the offense, and his recent commitment to treatment. He provided reports from a psychologist and a neuropsychologist who evaluated Bracey and opined he had at least one major mental disorder that contributed to the crime even though "alcohol ingestion may have set the stage." They believed he would respond to mental health treatment along with alcohol abstinence, anti-psychotic medication management, and psychotherapy.

The evaluating psychologist adopted a diagnosis from another provider of bipolar I disorder with a possible second diagnosis of schizophrenia. The psychologist also considered post-traumatic stress disorder and alcohol use disorder. He recommended a neurological evaluation because Bracey had never been evaluated after his involvement a decade earlier in a fatal automobile accident where he was the sole survivor. The psychologist thought Bracey could suffer both physical and psychological anomalies from this accident.

The psychologist acknowledged the "simplest explanation of the events . . . may be that Mr. Bracey suffered an alcoholic 'blackout' and this is the reason for his amnesia." However, he also said the impact from leaping out of a moving car "may have neurologically thrown him into a psychotic state." Bracey was ranting at his girlfriend when he was still in the vehicle, but the girlfriend thought he acted atypically when he tried to hit her after he jumped from the car. She said his behavior was "beyond drinking too much."

The evaluating neuropsychologist ruled out diagnoses of schizophrenia and attention-deficit hyperactivity disorder. But she believed he met the diagnostic criteria for bipolar II spectrum disorder. She stated his

4

presentation surrounding the offense was consistent with this disorder as well as unresolved post-traumatic stress disorder, post-concussive syndrome, and complicated bereavement. She believed he engaged in maladaptive coping for his mood issues by excessive alcohol use. The neuropsychologist noted that some of the records supported a conclusion that "Bracey was not acting in accordance with simply being under the influence of alcohol, and his behaviors were observed to be odd." The neuropsychologist referred to evidence that he was not wearing a shirt or shoes and only one sock when he entered the convenience store. He entered and exited the store several times, approaching or standing near customers, asking the clerk to use the phone, but not making the call, and a witness stating Bracey had "a 'weird look in his eyes.'" "At the time of the alleged offense," she said, "he was under the influence of alcohol, he appeared to be in the midst of a mood-related episode, and he may have also experienced another head injury when he jumped out of the moving vehicle."

The neuropsychologist believed his symptoms were treatable with medication and therapy. She believed he demonstrated openness and commitment to his mental health because he was currently participating in individual therapy and taking medication. With "ongoing treatment in the community and an absence of substance abuse," the neuropsychologist opined, "Bracey does not pose an unreasonable risk of danger to public safety."

The People opposed the request arguing Bracey was neither eligible nor suitable for diversion. They contended his criminal behavior was caused by excessive alcohol use even if he has an underlying mental health disorder. Further, the People argued there was no evidence Bracey would comply with treatment recommendations because Bracey did not submit information from

5

treatment providers.  Finally, the People contended Bracey posed an unreasonable risk of danger to public safety based on the severity of this crime against an elderly person and Bracey's criminal history.

The court denied the request for diversion.  The court found by clear and convincing evidence that the crime was not motivated or caused by a mental health condition.  Rather, the court found his actions were motivated by his desire to obtain a car, clouded by alcohol and the anger he feels when he is drunk.  Even if Bracey were eligible, the court determined he was not suitable for diversion based both on his history of refusing treatment and the unreasonable risk he posed to the safety of the public.

After the court entered judgment based on the guilty plea, Bracey appealed.  The court issued a certificate of probable cause after we issued an alternative writ in an unpublished opinion, *In re Bracey* (May 28, 2025, D086056).

## DISCUSSION

### I.  *General Legal Principles*

Trial courts have discretion under sections 1001.35 and 1001.36 to grant pretrial diversion for individuals suffering from qualifying mental health disorders.  (*People v. Frahs* (2020) 9 Cal.5th 618, 626; *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 677–678.)  Such diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment."  (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*); § 1001.36, subd. (f)(1).)  The Legislature intended the mental health diversion program to apply broadly.  (*Sarmiento*, at p. 891; *Gomez*, at p. 678.)

6

To qualify for mental health diversion, a trial court must find the defendant is both eligible and suitable as those terms are defined by section 1001.36. (*Sarmiento, supra*, 98 Cal.App.5th at p. 891.)

A defendant is eligible for diversion under section 1001.36, subdivision (b) if he or she been diagnosed with a recognized mental disorder and the disorder was a significant factor in the commission of the charged criminal offense. (*Sarmiento, supra*, 98 Cal.App.5th at p. 891; see also *Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133.)

A defendant is suitable for diversion under section 1001.36, subdivision (c) if "(1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv)." (*Sarmiento, supra,* 98 Cal.App.5th p. 891.)

For the fourth factor of suitability, an "unreasonable risk of danger to public safety as defined in section 1170.18, subdivision (c), means 'an unreasonable risk that the [defendant] will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv), which felonies are 'colloquially referred to as "super strikes." ' [Citation.] 'Those super strikes are murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14.' [Citation.] In making the unreasonable risk of danger to public safety determination, the court 'may consider the opinions of the district attorney, the defense, or qualified mental health expert, and may

consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate.' " (*Gomez v. Superior Court, supra*, 113 Cal.App.5th at p. 679, quoting 1001.36, subd. (c)(4).)

The defendant bears the burden "to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." (§ 1001.36, subd. (e); *Vaughn v. Superior Court, supra*, 105 Cal.App.5th at p. 134.) Even if the defendant makes that showing, the court still has discretion to deny diversion. (*Vaughn,* at p. 892.) However, this residual discretion "must be exercised ' "consistent with the principles and purpose of the governing law" ' " and the court's "statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Sarmiento, supra*, 98 Cal.App.5th at pp. 892–893.)

We review a trial court's decision on a request for mental health diversion for abuse of discretion and its factual findings for substantial evidence. (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 400.)

II.     *Substantial Evidence Supports the Court's Finding That Bracey is Not Suitable for Diversion*

As the court recognized, Bracey had several mental health diagnoses, each of which would qualify for mental health diversion. Assuming, without deciding, that he was eligible for diversion because one of those mental health diagnoses motivated, caused or contributed to Bracey's actions in the assault and carjacking, substantial evidence supports the trial court's finding that he was not suitable for diversion.

8

First, the court determined Bracey did not appear amenable to mental health treatment.  The neuropsychologist opined that Bracey could be safely treated in the community if he complied with treatment recommendations and abstained from alcohol.  But the record also supports the opposite conclusion that he could not be safely treated in the community because he would not comply with those recommendations.

Unlike *Sarmiento* where there was no indication the defendant was previously offered mental health treatment (*Sarmiento, supra,* 98 Cal.App.5th at pp. 893–894), Bracey has a history of mental health issues and a history of refusing to seek or comply with recommendations for medical or mental health treatment.  After he survived an automobile accident that killed two close friends, Bracey left the hospital against medical advice and he refused his mother's pleas to seek mental health treatment.

In January 2021, he was admitted to the hospital for a medical condition and was told not to drink.  He apparently did not follow this advice because by April 2021, his girlfriend was frustrated by his drinking coupled with mood changes, "crazy behavior," and poor decision-making.  With the encouragement of his girlfriend and father, he attended a virtual visit with a therapist who recommended a medication consultation with a psychiatrist.  Before keeping that appointment and obtaining medication, however, he drank heavily on the night of this incident.

Sometime after this incident, he did see a psychiatrist who prescribed an antipsychotic medication.  But Bracey took the medication for only a month or two because he did not like how it made him feel.  He did not follow through with treatment until after this case was filed.

Therefore, there is evidence to support a finding that Bracey's representation that he would comply with treatment in diversion was not

9

credible. "When he doesn't want to do something medically related to his health and mental well-being," the court observed, "he does not do it."

Second, the court determined Bracey "absolutely" posed an unreasonable risk of safety to the public as defined by the statute. Bracey watched the elderly man enter the store, waited for him to get his coffee and exit the store, and followed the man to his car. Bracey approached the man from behind, then punched and stomped on him until his body went limp. The court said Bracey did not give the victim a chance to defend himself because Bracey's goal was to get the car. The court noted that Bracey, who was taller and outweighed the man, was also younger and stronger. "[Bracey] knew he could beat [the man] and get the car away from him, and that's exactly what he did. After beating down the victim and getting the car, he left the man to die. That is the definition of a super strike."

As the People argued, this case could have been charged as attempted murder based on the seriousness of the crime and the extent of the violence involved. "[A] defendant is not suitable for diversion if the defendant is 'too dangerous to be treated in the community because he [or she] would commit a new violent super strike.' " (*People v. Graham* (2024) 102 Cal.App.5th 787, 799.) The court has discretion to determine that a defendant is likely to commit a super strike based on the nature and manner of the charged crimes. (*Ibid.*) The statute does not require the defendant to be charged with a super strike; the court may rely solely on the circumstances of the offense to determine either eligibility or suitability. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 861–862.) The court appropriately determined Bracey was not suitable for diversion based on the severe circumstances of the crime.

This case is distinguishable from cases cited by appellant. In *People v. Moine* (2021) 62 Cal.App.5th 440, the defendant's offenses, which involved a

10

fistfight with another patient and criminal threats, did not involve a violent felony and the People did not present evidence that the defendant was likely to commit a super strike in the future. (*Id.,* at pp. 444, 450–451.) In *People v. Williams* (2021) 63 Cal.App.5th 990, the defendant had no prior criminal record, faced no other pending charges, and there was no evidence he assaulted anyone or engaged in violence. (*Id.* at p. 1003.)

In contrast to these cases, the circumstances of the crime here were brutally violent and could have been deadly. Bracey also had a criminal history. He pleaded guilty to a misdemeanor charge of domestic violence in another state in 2013. Over a year after the vicious carjacking offense charged in this case, Bracey was arrested for his involvement in an assault with a deadly weapon. Witnesses observed Bracey grab and hold down a woman while his girlfriend struck the woman in the head with a shovel, causing the woman injuries that required treatment at a hospital. Although he apparently was not charged in that case, this evidence of Bracey's propensity for violence, particularly when he declines to comply with treatment recommendations, supports the court's finding that he was not suitable for diversion because he is likely to commit a super strike in the future.

Finally, we are not persuaded by Bracey's argument that the court's finding of dangerousness to the public is undermined because the judge at the arraignment hearing allowed Bracey to remain out of custody on bail. The cases cited by Bracey for this point are inapt.

In *Williams,* a local court rule required separate diversion hearings on the issues of eligibility and suitability. Two judges came to opposite conclusions in those hearings about whether the defendant in that case presented a danger to society for purposes of diversion. The appellate court

11

noted this was an irregular procedure resulting in inconsistent conclusions. (*Williams, supra,* 63 CalApp5th at p. 1005, fn. 15.)  That is not the situation here.  The arraignment court did not consider the issue of diversion, so there were no conflicting conclusions on the issue of whether he was suitability for diversion.

In *Moine,* the court concluded the circumstances of the charges and the record did not support a finding the defendant was likely to commit a super strike if treated in the community.  (*Moine, supra,* 62 Cal.App.5th at p. 451.)  The appellate court went on to say it found "further support" for this conclusion from the trial court's decision to release the defendant into the community on bond, impliedly after finding he was not likely to cause " 'great bodily harm to others' " if released.  (*Ibid*.)  This dicta does not persuade us that a determination at arraignment to release a defendant on bail pending trial can or should override the decision of a court who determined, based on evidence, that the defendant is not suitable for pretrial diversion due to the risk he would commit a super strike.

The judge who presided over Bracey's arraignment and allowed him to remain out of custody on bail faced different considerations.  At the arraignment phase, "the state has a compelling interest in assuring the arrestee's appearance at trial and protecting the safety of the victim as well as the public.  Yet those incarcerated pending trial—who have not yet been convicted of a charged crime—unquestionably suffer a 'direct "grievous loss" ' of freedom in addition to other potential injuries."  (*In re Humphrey* (2021) 11 Cal.5th 135, 142.)  To detain an arrestee pending trial, the need to protect community safety must conflict with the right to pretrial liberty to such an extent that "no option other than refusing pretrial release can reasonably vindicate the state's compelling interests" and "[the] court must first find by

12

clear and convincing evidence that no condition short of detention could suffice and then ensure the detention otherwise complies with statutory and constitutional requirements." (*Id.* at p. 143.) "Even when charged with a felony, noncapital defendants are eligible for pretrial release—on their own recognizance, on OR supervised release, or by posting money bail. . . . The disadvantages to remaining incarcerated pending resolution of criminal charges are immense and profound." (*Id.* at p. 147.)

At a diversion hearing the court weighs different interests based on evidence. The issue for diversion is whether the defendant can safely be treated in the community to allow suspension and perhaps dismissal of criminal proceedings.

We emphasize that our review is deferential. An abuse of discretion is not shown where reasonable minds might disagree about whether Bracey could be safely treated in the community or whether he is likely to commit a super strike. The existence of "some evidence" in support of a finding that the defendant would not pose a significant risk so long as he complied with treatment recommendations "is not a sufficient basis for the court to supplant the findings of the trial court." (*People v. Brown* (2024) 101 Cal.App.5th 113, 124.)

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

KELETY, J.