Filed 6/17/26  In re King CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Leo Daniel King <br><br> on Habeas Corpus. | E087390 <br><br> (Super.Ct.No. FWV25001352) <br><br> OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  Enrique Guerrero, Judge.  Petition granted.

Civil Rights Corps, Katherine Hubbard, Carson White, and Salil Dudani for Petitioner.

No appearance for Respondent.

Jason Anderson, District Attorney, and Brent J. Schultze, Deputy District Attorney for Real Party in Interest.

In *Yedinak v. Superior Court* (2023) 92 Cal.App.5th 876 (*Yedinak*), we outlined the requirements a trial court must follow before denying a defendant bail and ordering

pretrial detention. Among other requirements, the trial court must find that no alternative to detention can protect countervailing interests, and it must do so by stating its reasons with enough specificity to permit appellate review. Because the trial court did not do so here, we grant Leo Daniel King's petition for a writ of habeas corpus.[1]

## I. BACKGROUND

King owed either $10,000 or $20,000 to his cousin, Jeremy Michael Juneau. One night, King met with Juneau, and according to King, after Juneau learned that King did not have the money, Juneau pulled a gun on King. The two then struggled, and King shot Juneau multiple times with Juneau's gun. Juneau was found dead at the scene with his pockets turned inside out, some common items (like a phone and wallet) missing, and his shoes placed next to his body. Detectives found King the next day in his car as he was leaving home. Inside the car was a backpack containing more than $5,000.

King was charged with Juneau's murder (§ 187, subd. (a)). He requested that bail be set at $100,000, an amount he said could afford. He proposed the court could also impose other conditions such as GPS monitoring, checking in with probation, and a prohibition on possessing firearms. The trial court denied bail. King then noted that he suffered from congenital heart failure and that his heart operates "at basically 25 percent." The trial court stated it would keep its original ruling.

---

[1] Undesignated statutory references are to the Penal Code.

King petitioned for a writ of habeas corpus in this court, arguing that the trial court failed to follow *Yedinak* by, among other reasons, not adequately considering alternatives to detention. We issued an alternative writ, directing the trial court to either vacate its order and conduct a new bail hearing under *Yedinak* or show cause.[2] After we were informed that the trial court vacated its order and held a new hearing, we discharged the petition.

At the second hearing, King again argued that less restrictive alternatives to detention could be imposed. He submitted 27 letters from members of the community attesting to his character. He described extensive ties to the community and said that he would have no reason to flee given that his heart operates at a greatly reduced capacity. In response, the prosecutor argued that GPS monitoring would be insufficient, and that the fact King was found in a car with over $5,000 shows he was trying to flee. King responded that possessing large amounts of cash did not signal an intent to flee because Juneau was also known to carry large amounts of cash.

The trial court again denied King bail. King then filed a second petition for habeas corpus in this court, which we summarily denied. King petitioned for review in the California Supreme Court. Our Supreme Court granted the petition for review and transferred the case back to our court with instructions to set an order to show cause. Pursuant to the Supreme Court's order, we vacated our summary denial and ordered the

---

[2] On our own motion, we take judicial notice of the record in case number E086704, King's earlier writ petition.

People to show cause why King "is not entitled to relief on the ground [that the trial court's second bail denial] failed to address the feasibility of less restrictive alternatives to detention with sufficient specificity to facilitate review of its detention order."

## II. ANALYSIS

"Our state constitution entitles arrestees to bail unless one of a limited number of exceptions applies. (Cal. Const., art. I, § 12.) The exception at issue here, set out in [article I, section 12, subdivision (b) of the California Constitution (section 12(b))], provides that a trial judge may deny bail when a defendant is charged with a felony offense 'involving acts of violence on another person . . . when the facts are evident or the presumption great' and the judge 'finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others.'" (*Yedinak*, *supra*, 92 Cal.App.5th at p. 884; see also *In re Kowalczyk* (2026) 19 Cal.5th 593, 630 ["a court may order the pretrial detention of a noncapital defendant only in the circumstances specified in subdivisions (b) and (c) of section 12 [of article I of the California Constitution]"].)

In *Yedinak*, we noted that California Supreme Court caselaw imposed two more requirements for the so-called violent felony exception to apply. (*Yedinak*, *supra*, 92 Cal.App.5th at p. 886.) In sum, "a trial judge must satisfy four legal requirements before issuing a pretrial detention order under section 12(b). The judge must: (1) find there is sufficient evidence to sustain a guilty verdict against the arrestee on a qualifying felony; (2) find by clear and convincing evidence a substantial likelihood that the arrestee's

4

release would result in great bodily harm to others; (3) find by clear and convincing evidence that no less restrictive condition than detention can reasonably protect the interests in public or victim safety, and the arrestee's appearance in court; and (4) set forth the reasons for their decision on the record and include them in the minute order." (*Ibid.*, citing *In re White* (2020) 9 Cal.5th 455 and *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*).)

Per our order to show cause, only the third and fourth *Yedinak* factors are at issue here. We hold the trial court did not adequately satisfy either factor.

At the beginning of its ruling from the bench, the trial court said it had "considered less restrictive alternatives set forth on the record, including the GPS and bail setting," and that it would "go through [its] analysis on this." It discussed its reasoning as to the first two *Yedinak* factors. It then stated:

"The court's also going to find by clear and convincing evidence that defendant Mr. King presents a flight risk and that the charge here does subject him to an indeterminate exposure of life and, therefore, the potential penalty for the charged offense is great.

"I have considered the least restrictive alternatives. I have considered the character letters that have been submitted on Mr. King's behalf, his ties to the community, his employment within the community, the long-standing history of the people who have gone through his business, that have worked with him, the support within the community that's been represented through the character letters.

5

"I have considered the least restrictive—or at least an alternative means of ensuring his appearance in court, including the letter provide[d] by [King's counsel] for—through GPS Monitoring Solutions that he's already been accepted should the court make the order.

"And I've also considered not only his medical situation, but the representation by [King's counsel] that [King] can afford bail if the court were to set bail at $100,000.

"I'm balancing between not only these least restrictive means as well as whether he presents both a danger and a flight risk to the community.  And as of right now, based on the evidence I've heard for this hearing, I'm going to go ahead and deny bail.  Again, as I've stated before, I've considered least restrictive alternatives as set forth on the record.  I am finding by clear and convincing evidence that he presents both a flight risk and a danger to the community."

The trial court made no express finding by clear and convincing evidence that no less restrictive condition than detention could reasonably protect public safety or guarantee King's appearance.  It found that King was a flight risk and a danger to the community, but that is different from finding that nothing less than detention could protect the government's and public's interests.  "An arrestee may not be held in custody pending trial unless the court has made an individualized determination that . . . detention is necessary to protect victim or public safety, or ensure the defendant's appearance, *and* there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." (*Humphrey*, *supra*, 11 Cal.5th at p. 156, italics added.)  At

best, the trial court balanced the less restrictive conditions King proposed against his flight risk and danger to the community. However, stating that a group of interests outweighs another is not the same as finding, under a heightened evidentiary standard, that some of those interests cannot be adequately protected. Moreover, because "*Humphrey* specifically requires, as a matter of procedural due process, that a court entering a pretrial detention order set forth 'the reasons for its decision on the record and to include them in the court's minutes,'" "the reasons supporting a denial of bail cannot be implied." (*In re Harris* (2021) 71 Cal.App.5th 1085, 1105 (*Harris*), reversed in part on other grounds in *In re Harris* (2024) 16 Cal.5th 292.)

The trial court did not just fail to justify its reasoning for a "no less restrictive condition" finding with enough specificity, it made no express "no less restrictive condition" finding at all. We emphasize that on remand, the trial court must do more than consider less restrictive conditions, as it appears to have done here. It must discuss why each less restrictive condition offered, and why all of them collectively, would not reasonably protect public safety or guarantee King's appearance. (See *Yedinak*, *supra*, 92 Cal.App.5th at p. 888 ["[A]s far as we can tell from the record, the judge considered only a single less restrictive alternative: an order prohibiting Yedinak from being in the unsupervised presence of children. However, under *Humphrey* not only must she consider more than one alternative, she must also—in the event she finds the considered alternatives insufficient to protect public safety—articulate why and make the finding by clear and convincing evidence."].) It must also expressly consider factors such as King's

previous criminal record and history of compliance with court orders. (See *Humphrey*, *supra*, 11 Cal.5th at p. 152.)

The People contend that King forfeited the issue by failing to request a ruling on why his proposed less restrictive conditions were insufficient. On this, we agree with *Harris*: "[A] petitioner who urges the availability of less restrictive alternatives to detention exhausts his or her superior court remedies as to that issue, and generally will be entitled to review of that issue," and "implicitly, such a petitioner also requests that the court provide an adequate statement of reasons to allow for meaningful judicial review." (*Harris*, *supra*, 71 Cal.App.5th at p. 1107.) Although *Harris* recognized forfeiture may apply to bail denial decisions where "the record indicates the parties were 'clearly apprised' of what the bail decision would be and the reasons for it in advance of the hearing" (*id.* at p. 1108), such an exception does not apply here.

The People also argue any error was harmless. *Harris* noted an "apparent tension in the case law" as to whether this kind of error requires reversal but did not resolve it, as the record did not permit meaningful appellate review or contain "overwhelming evidence" supporting the trial court's conclusion. (*Harris*, *supra*, 71 Cal.App.5th at p. 1106.) The same is true here. The court's mention of King's less restrictive alternatives to detention does not permit meaningful appellate review, and we cannot say that there was overwhelming evidence that those alternatives could not reasonably protect public safety or guarantee King's appearance in court. There is some evidence in support of a different conclusion: King has a severe heart condition requiring medical care, he

submitted over two dozen character letters, and the gun that led the trial court to believe that King could access firearms was Juneau's gun.[3]

## III. DISPOSITION

The petition is granted. Respondent superior court is directed to vacate its pretrial detention order of October 6, 2025 and hold a new hearing at which the court considers petitioner's motion in a manner that complies with *Humphrey*, *supra*, 11 Cal.5th 135, *Yedinak*, *supra*, 92 Cal.App.5th 876, and this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

RAMIREZ_____
P. J.

MILLER_____
J.

---

[3] In finding the second *Yedinak* factor—"a substantial likelihood that the defendant's release would result in great bodily harm to others" based on clear and convincing evidence (*Yedinak*, *supra*, 92 Cal.App.5th at p. 886)—the trial court noted that Juneau's gun was unregistered (or a "ghost" gun) and "that because . . . this ghost gun was used in the commission of this offense, the court believes that Mr. King will have access to firearms given the nature that he came into possession of a ghost gun."